T.C. Memo. 2012-63


UNITED STATES TAX COURT


ESTATE OF IRENE M. BLACK, DECEASED, SAMUEL P. BLACK, III,
EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 23516-06.                    Filed March 8, 2012.


        Among the issues that we decided in our prior Opinion in this
case was the deductibility, by the Estate of Irene M. Black, of certain
fees.  In their respective computations for entry of decision under Rule
155, Tax Court Rules of Practice and Procedure, the parties differ as to
the deductibility by that estate of a trustee's fee and certain anticipated
legal fees.

        <u>Held</u>:  Deductibility of the contested fees determined.

────────────────────

        [*]This opinion supplements our previously filed Opinion, <u>Estate of Black v.
Commissioner</u>, 133 T.C. 340 (2009).

John W. Porter, for petitioner.

Gerald A. Thorpe, for respondent.

## SUPPLEMENTAL MEMORANDUM OPINION

HALPERN, Judge:  This matter is before us as a result of the parties' dispute over the proper computations for entry of decision under Rule 155[1] in connection with our Opinion in Estate of Black v. Commissioner, 133 T.C. 340 (2009) (Estate of Black I or our prior Opinion).

### Background

In our prior Opinion, we sustained estate tax deductions for Mrs. Black's estate (sometimes, estate) of $577,500 for the executor's fees paid to Samuel P. Black, III (petitioner), and $577,500 for the legal fees paid to MacDonald, Illig, Jones & Britton LLP (MacDonald Illig).  Those deductions equaled one-half of what petitioner alleged to be the deductible fees, in each case, of $1,155,000.

Respondent and petitioner each filed a "Computation for Entry of Decision" under Rule 155 on April 18 and 19, 2011, respectively (Rule 155 computations).

---

[1]Unless otherwise stated, all section references are to the Internal Revenue Code as amended and all Rule references are to the Tax Court Rules of Practice and Procedure.

In his Rule 155 computation, petitioner notes that "there may be three primary differences between * * * [his] and Respondent's computation." He states that those differences relate to (1) a deduction for a trustee's fee of $1,458,234 (trustee's fee) paid to petitioner as trustee of the marital trust for Mrs. Black (marital trust) and not included as a deductible fee on the estate's tax return (trustee's fee issue);[2] (2) an anticipated deduction of $20,000 for legal fees payable to MacDonald Illig for reviewing and amending income tax returns that it previously prepared and filed on behalf of the marital trust (legal fee issue), and (3) an anticipated additional $4,938,291 deduction for State death tax payments (State death tax issue). In his Rule 155 computation, respondent does reject the foregoing additional claimed deductions.

---

[2]In his computation for entry of decision, petitioner describes the trustee's fee issue as relating "to a deduction for fees incurred prior to the filing of, but not reflected in, the Notice of Deficiency and the Petition", but, in his memorandum in support of that computation, he states that the parties have agreed that "Petitioner may request a deduction in these Rule 155 proceedings for those expenses incurred after filing the Estate Tax Return and before the close of these Tax Court proceedings." Indeed, in his affidavit attached to the second stipulation of facts, discussed infra, and relied on by petitioner in support of his computation, he describes actions justifying the trustee's fee that plainly did not occur until after the petition was filed; e.g., "Traveled to Philadelphia, Pennsylvania, and attended trial in late November 2007." We assume that the parties agree that the dispute regarding the trustee's fee is not bounded by petitioner's actions as trustee before the notice of deficiency or the petition.

Pursuant to a May 5, 2011, order of this Court directing the parties to file memorandums in support of their respective positions, the parties filed the requested memorandums and, in addition, filed a "Joint Motion To Reopen Record", attached to which was a Second Stipulation of Facts and three new exhibits: Exhibit 119-P, affidavit of petitioner, and Exhibits 120-P and 121-P, petitioner's declarations listing all fees for which deductions were (or are to be) taken by Mr. and Mrs. Black's estates. We granted that motion on June 20, 2011, and the Second Stipulation of Facts, with attached exhibits, is incorporated herein by this reference. Thus, the parties have expanded the trial record to provide the facts necessary to enable the Court to resolve their dispute over the Rule 155 computations. Therefore, they have not violated the prohibition in Rule 155(c) against raising new issues in a Rule 155 computation. See Landreth v. Commissioner, T.C. Memo. 1986-242, aff'd, 845 F.2d 828 (9th Cir. 1988), vacated and remanded on other grounds, 859 F.2d 643 (9th Cir. 1988).

Respondent, in a proposed decision document attached to his Computation for Entry of Decision and in his memorandum in support thereof, agrees to the additional $4,938,291 State death tax deduction provided the taxes are paid (and that payment is substantiated) before entry of decision in this case. Subsequently, on December 8, 2011, respondent filed "Respondent's Report concerning the

Parties' T.C. Rule 155 Computations" in which he acknowledges petitioner's payment of additional State death taxes totaling $4,938,290.70. Therefore, the propriety of reflecting that payment in the parties' Rule 155 computation is not in dispute. Thus, only the trustee's fee and legal fee issues remain before us.

Discussion

## I. General Principles

As we noted in our prior Opinion, section 2053(b), entitled "Other Administrative Expenses", generally provides a deduction, in determining the taxable estate, for expenses incurred in administering nonprobate property (second category expenses), which would include the fees at issue herein, to the same extent as they would be deductible under section 2053(a); i.e., as if incurred in administering probate property (first category expenses). See also sec. 20.2053-8, Estate Tax Regs.

In pertinent part, section 2053(a) provides a deduction "for administration expenses * * * as are allowable by the laws of the jurisdiction * * * [in this case, Pennsylvania[3]] under which the estate is being administered." To be deductible, such expenses must be "actually and necessarily incurred in the administration of

---

[3]Article VIII of the Samuel P. Black, Jr. Revocable Trust Agreement, which created the marital trust, provides that it "shall be governed in all respects by the laws of the Commonwealth of Pennsylvania."

the decedent's estate".  See sec. 20.2053-3(a), Estate Tax Regs.  The principles contained in section 20.2053-3(b) through (d), Estate Tax Regs., relating to the deductibility of first category expenses, including executor's commissions and attorney's fees, are applicable in determining the deductibility of second category expenses, including trustee's commissions and attorney's fees.  See sec. 20.2053-8(c), Estate Tax Regs.

Pursuant to section 20.2053-3(b)(1), Estate Tax Regs., executor's commissions, to be deductible, must be in an amount that is "in accordance with the usually accepted standards and practice of allowing such an amount in estates of similar size and character in * * * [Pennsylvania], or any deviation from the usually accepted standards or range of amounts (permissible under applicable local law) must be justified to the satisfaction of the Commissioner."  In this case, petitioner argues that the trustee's fee was "in accordance with the usual standard and practice of allowing such fees under Pennsylvania law."

Pursuant to section 20.2053-3(c)(1), Estate Tax Regs., deductible attorney's fees "may not exceed a reasonable remuneration for the services rendered, taking into account the size and character of the estate, the law and practice in * * * [Pennsylvania], and the skill and expertise of the attorneys."

## II. The Trustee's Fee Issue

### A. Introduction

Article VI, section G., of the Samuel P. Black, Jr. Revocable Trust Agreement (section G) provides for the payment of fees to the trustee of the marital trust created thereunder, as follows:

> The Trustee shall be entitled to deduct each year as compensation reasonable fees. In the case of a corporate Trustee those fees shall be in accordance with the prevailing rate of compensation charged by the Trustee for like services at the time such services are rendered. In addition to the trustee's normal compensation, the Trustee shall be entitled to deduct such fees as shall reasonably compensate the Trustee for such additional services which the Trustee may be required to perform.

We interpret that provision as specifying the annual compensation that the marital trust might pay each year for ongoing, routine trust administration services performed by an individual or corporate trustee and as allowing the marital trust to pay the trustee additional, reasonable compensation for extraordinary services. The provision is not directly relevant to our task of determining the deductibility to the estate of the trustee's fee, since, first, the estate, not the marital trust, paid the trustee's fee.[4] Moreover, because Mrs. Black died before the trust could even be funded, petitioner's services with respect to the corpus of the marital trust

---

[4]A portion of the trustee's fee paid to petitioner by the marital trust was deducted on the marital trust's fiduciary income tax returns. See infra note 7.

(which also constituted the bulk of Mrs. Black's gross estate) could not have been the routine trust administration expenses contemplated in section G. Indeed, in his Rule 155 computation, petitioner states: "The trustee fees of $1,458,234 were necessarily incurred in winding up the affairs of the estate * * * , and the total amount does not include any routine trust administration fees for managing the assets of the Marital Trust." Thus, not only did the estate (and not the marital trust) pay the trustee's fee, but petitioner concedes that his services for which he received the trustee's fee were services to the estate. That does not mean, however, that the estate may not pursuant to section 2503(b) deduct some or all of the trustee's fee. Respondent agrees and explains his position as follows:

> [T]he fact that most of petitioner's activities as trustee would normally be carried out by the estate's personal representative does not prevent * * * [Mrs. Black's] estate from claiming a deduction for the trustee's fees paid. See Haggart's Estate v. Commissioner, 182 F.2d 514, 515 (3d Cir. 1950) ("If the corpus of the trust is to be included as the subject of taxation it seems incongruous for the expenses involved in determining decedent's net estate to be disregarded."); Treas. Reg. sec. 20.2053-3(b)(3) (stating that trustee's fees attributable to services normally performed by an executor are only deductible under sec. 2053(b)).

Because the estate, not the marital trust, paid the trustee's fee, and because the estate paid the trustee's fee for services to the estate, we shall disregard section G and shall determine the deductibility of the trustee's fee according to whether

the fee satisfies the reasonableness standard of Pennsylvania law.  Pursuant to 20 Pa. Cons. Stat. Ann. sec. 7768(a) (West 2005 & Supp. 2011), a trustee "is entitled to compensation that is reasonable under the circumstances" where the trust instrument does not specify the trustee's compensation for the services actually performed.  The trustee of a testamentary trust who also acts as personal representative (e.g., as executor) of the settlor's estate shall not be barred, as a result thereof, from entitlement to compensation from the trust for the performance of services as a trustee.  Id. sec. 7768(c)(3).  "In determining reasonable compensation, the court may consider, among other facts, the market value of the trust and may determine compensation as a fixed or graduated percentage of the trust's market value."  Id. sec. 7768(d).[5]

B.  Petitioner's Position

Petitioner cites the foregoing statutory provision and Pennsylvania caselaw, wherein the courts have approved trustee's commissions based upon a percentage of the value of the trust principal (or, in the case of executor's fees, a percentage of

---

[5]Mr. Black died in 2001 and Mrs. Black died in 2002.  The cited provision of Pennsylvania law, considered by both parties to be applicable herein (20 Pa. Cons. Stat. Ann. sec. 7768 (West 2005 & Supp. 2011)), did not become effective until November 6, 2006.  The Joint State Government Commission comment with respect to that provision states, however, that it is an "amalgamation" of two provisions of prior law and that it "codifies existing Pennsylvania law."

the gross estate), in support of his position that the combination of trustee's and executor's fees (the latter as approved in our prior Opinion) paid to petitioner, which, together, constituted approximately 1.68% of the $140 million value of the estate, was reasonable.  Petitioner further seeks to justify the total of those fees on the ground that petitioner's services "on behalf of the Marital Trust and the Estate were much more than routine".  In that connection, petitioner cites both (1) his services addressed in our prior Opinion (e.g., marshaling assets of the estate, gathering materials and information necessary to prepare the Federal and Pennsylvania estate tax returns, working with outside attorneys and accountants, services related to raising funds to pay Federal and Pennsylvania estate taxes, and responding to audit requests from respondent) and (2) his services not addressed in our prior Opinion (for which petitioner seeks an additional $1,458,734 deduction for the trustee's fee); viz, his various services (mostly working with outside attorneys and accountants) in connection with his response to the notice of deficiency, trial preparation, the trial itself, the posttrial briefs and the consideration of any appeal of our decision in Estate of Black I.  Petitioner also cites as justification for the trustee's fee his performance of certain duties in his capacity as executor of the estate.  Those services consisted of his working with outside attorneys and accountants to review and respond to audit inquires and the notice of deficiency;

also, services in connection with the subsequent litigation in this Court. Petitioner argues that the foregoing services involved "difficult decisions on extremely complicated matters in an area of law that is constantly changing"; that he "successfully overcame [respondent's] challenges * * * which resulted in a savings of approximately $61.75 million"; and that such services were "well beyond the scope of * * * routine administration * * * [and] well within the range for baseline fees used under Pennsylvania law to determine reasonable compensation for ordinary routine administrations." For those reasons, he concludes that "the compensation paid to * * * [him] is reasonable based upon the services performed."

### C. Respondent's Position

In Estate of Black I, respondent did not challenge the reasonableness of the executor's and attorney's fees at issue therein, only petitioner's allocation of those fees, in their entirety, to Mrs. Black's estate. In this proceeding, however, respondent argues that "petitioner has not established that the * * * [trustee's] fees * * * are reasonable given the circumstances of this case."[6] In particular,

_____

[6]Petitioner alleges, and respondent does not dispute, that a large portion of the trustee's fee was for services related to the notices of deficiency and ensuing litigation in Estate of Black I, which involved proposed deficiencies for both Mr. and Mrs. Black's estates. Respondent does not argue, however, that on that basis

(continued...)

respondent rejects petitioner's contention that the total compensation, consisting of both executor's fees paid to him and deducted by Mrs. Black's estate and trustee's fees paid to him, is reasonable in amount. Rather, he argues that the fees paid to petitioner that have already been allowed as deductions to the estate adequately compensated petitioner for his services.[7] He acknowledges that 20 Pa. Cons. Stats. Ann. sec. 7768(d) (2005 & Supp. 2011) provides that "[i]n determining

---

[6](...continued)
alone a portion of the trustee's fee must be allocated to, and considered an expense of, Mr. Black's estate. Therefore, in determining the extent to which we should allow that fee as a deduction for Mrs. Black's estate, we will address only respondent's arguments that (1) the executor's fees paid to petitioner for administering both estates adequately compensated him for the same services as trustee of the marital trust and (2) the actual effort to which petitioner's services were merely ancillary was performed by outside attorneys who were adequately compensated therefor (see discussion infra). We note, however, that on its fiduciary income tax returns the estate deducted $316,266 as trustee's fees which are not in issue here (but which respondent apparently allowed).

[7]Respondent states that petitioner's fees for which deductions have been allowed total $2,133,266. Petitioner states: "The fees collectively paid to Pat Black for services on behalf of both the marital trust and the estate totaled $2,352,500". Petitioner breaks down that amount as follows: $577,500 allowed by us as deductible executor's fees, $316,266 deducted as a trustee's fee on the marital trust's fiduciary income tax returns, not challenged by respondent, and the $1,458,734 trustee's fee at issue herein. Because respondent's figure ends with 266, we assume it includes the aforementioned $316,266, but we are unable to confirm the other $1,817,000 as fees for which a deduction has been allowed. Petitioner's figure appears to be verifiably accurate. Therefore, we find that the total fees paid to petitioner for which petitioner seeks a deduction sum to $2,352,500 of which $1,458,734 is at issue herein.

reasonable compensation, the court may consider, <u>among other facts</u>, the market value of the trust and may determine compensation as a fixed or graduated percentage of the trust's market value" (emphasis added by respondent), but he argues that "the primary focus under Pennsylvania law is on the complexity of the matters handled by the trustee and the amount of time and effort * * * required". He further argues that it "would be particularly inappropriate in this case" to focus on the ratio of fees claimed to the market value of the trust corpus because the marital trust corpus "was comprised of a passive asset [the Black LP partnership units, which petitioner] * * * as trustee did not have to manage * * * [but merely hold] as a source of funds to * * * pay the federal and state estate tax liabilities once they were finally determined." He also acknowledges that 20 Pa. Cons. Stat. Ann. sec. 7768(c)(3) (West 2005 & Supp. 2011) permits a settlor's representative (e.g., an executor) to also receive fees as the trustee of a testamentary trust, but he argues that the section does not permit the trustee "to receive a fee for an activity for which he has already been compensated * * * as the personal representative." Finally, he argues that the admittedly significant time and effort involved in arranging the secondary offering and handling the estate tax audit and subsequent litigation were expended by petitioner's attorneys (not petitioner) and that they were amply rewarded.

D. <u>Analysis</u>

Petitioner's services as trustee of the marital trust were all occasioned by Mrs. Black's death before the trust could be funded and were in the nature of winding up the affairs of the deceased; e.g., raising the funds necessary to pay (and contesting respondent's proposed increase in the amount of) the estate taxes with respect to what would have been the trust corpus, and which, in turn, constituted the bulk of her estate. In essence, petitioner's services on behalf of the marital trust were in the nature of services normally performed by an executor and, as such, are deductible as "second category" expenses (to the extent they were reasonable in amount) under section 2053(b). <u>See</u> <u>Burrow Trust v. Commissioner</u>, 39 T.C. 1080, 1086-1090 (1963), <u>aff'd</u>, 333 F.2d 66 (10th Cir. 1964); secs. 20.2053-3(b)(3), 20.2053-8(c), Estate Tax Regs. Therefore, the only issue with respect to the trustee's fee for which petitioner claims a deduction herein is the extent to which it may be considered reasonable in amount.

We agree with respondent that the controlling principle of Pennsylvania law, codified at 20 Pa. Cons. Stat. Ann. sec. 7768 (West 2005 & Supp. 2011), is that a trustee's fee must be commensurate with the "complexity of the matters handled by the trustee and the amount of time and effort * * * required." As stated by the Supreme Court of Pennsylvania in <u>In re Harrison's Estate</u>, 66 A. 354, 355

(1907): "It will be observed * * * that the rule as to [trustee] commissions in all cases is compensation for the responsibility incurred and the service and labor performed." See also In re Williamson's Estate, 82 A.2d 49, 52 (1951) ("While as a matter of convenience the compensation of a fiduciary may be arrived at by way of percentage, the true test is always what the services were actually worth and to award a fair and just compensation therefor."), superseded by statute on another point as described in In re Breyer's Estate, 379 A.2d 1305, 1308 (1977).

Petitioner specifically stated in Estate of Black I that the $1,155,000 in executor's fees was intended to compensate him for his services as both Mrs. Black's executor and as the trustee of the marital trust. Moreover, in Estate of Black I, Mr. Cullen, petitioner's principal outsider tax adviser at MacDonald Illig, testified that 90% of the $1,155,000 in executor's fees paid to petitioner that Mrs. Black's estate sought to deduct in their entirety was intended to compensate petitioner as trustee of the martial trust. That testimony is corroborated by petitioner's affidavit in this Rule 155 proceeding wherein he lists, among the services allegedly justifying his receipt of $1,458,734 as a trustee's fee, many of the same trust-related services cited as justification for the deductibility of the executor's fee in Estate of Black I;

e.g., services related to the valuation of the trust corpus and raising the funds necessary to pay Federal and Pennsylvania estate taxes.[8]

Petitioner did not claim in Estate of Black I, nor does he now claim, that the $1,155,000 in fees paid to him was inadequate compensation for the foregoing services. His reference to those services as justification for the deduction of at least a portion of the $1,458,734 trustee's fee at issue does, however, suggest that, in effect, he is attempting to increase his deductible executor's fee over the $1,155,000 claimed as a deduction therefor on the estate tax return filed for Mrs. Black's estate. It is not the function of a Rule 155 proceeding, however, to serve as a forum for relitigating an issue already decided in the case to which it relates. See Rule 155(c) (providing in pertinent part: "[N]o argument will be heard upon or consideration given to issues or matters disposed of by the Court's findings and conclusions or to any new issues."). Therefore, we consider that portion of the $1,458,734 trustee's fee at issue herein that, in effect, further compensates petitioner for services already

---

[8]The dual nature of petitioner's services was, of course, the inevitable result of the fact that the trust corpus also constituted almost the entirety of Mrs. Black's estate.

compensated by his $1,155,000 in executor's fees to be excessive and nondeductible by Mrs. Black's estate.[9]

Petitioner also refers to other services not considered in Estate of Black I (additional fiduciary services) as justification for the trustee's fee; e.g., his working with outside attorneys, accountants and other advisers with respect to preparing responses to respondent's notice of deficiency, his services with respect to all aspects of the subsequent litigation in this Court (i.e., Estate of Black I), and anticipated future services related to the review and filing of fiduciary income tax returns and winding up the marital trust.

Respondent argues that the actual work to which all of petitioner's services related was performed by outside attorneys who were paid handsomely for their efforts and that "[p]etitioner has not shown that he personally handled any complicated matters or that he was required to expend an extraordinary amount of

---

[9]We also find that most of the services petitioner lists in his affidavit as duties performed by him as executor of Mrs. Black's estate (e.g., meeting with outside advisers in connection with being appointed executor, marshalling of estate assets, reviewing and filing estate, inheritance and fiduciary income tax returns, and reviewing and responding to audit inquiries) were adequately compensated by the $1,155,000 in executor's fees considered in Estate of Black I, again because virtually all of those services were cited in Estate of Black I as justification for those fees.

time and effort on any particular matter."[10]  Respondent further argues that, in the absence of "contemporaneous records documenting the time * * * [petitioner] devoted to the various activities described in his affidavit or any evidence showing how * * * [the trustee's fee was] calculated * * * it lacks the specificity needed to substantiate his claim", citing Estate of Koss v. Commissioner, T.C. Memo. 1994-599.

In Estate of Koss, although we denied, for lack of evidence, the $100,000 deduction claimed by the personal representative for her personal representative's fee, we sustained the Commissioner's allowance of a $26,400 "estimated" fee. Similarly, we accept that petitioner performed (or will perform) the additional fiduciary services described in his affidavit; and although we agree with respondent that all of the heavy lifting was done by outside advisers, we recognize that petitioner's efforts had value, particularly in connection with the Estate of Black I litigation in which he served as a witness.

Both parties' Rule 155 computations reflect the allowance of attorney's fees of $277,931 over and above what we allowed in Estate of Black I, which does not include the $20,000 of anticipated additional attorney's fees for future services, the

_____

[10]Presumably, respondent would make the same argument with respect to the future anticipated services, which also appear to involve working with outside attorneys and accountants.

deductibility of which is in dispute herein.  Assuming that that represents a reasonable payment for the MacDonald Illig services with respect to which petitioner's additional trustee's services were (or are to be) merely ancillary or supportive, we estimate (and, therefore, find) that petitioner is entitled to a trustee's fee of $140,000, which is approximately one-half of the amount paid to MacDonald Illig.

E.  Conclusion

The parties are directed to submit revised Rule 155 computations reflecting a deduction under section 2053(b) by Mrs. Black's estate for a trustee's fee in the sum of $140,000.

III.  The Attorney's Fee Issue

A.  Introduction

Petitioner seeks to deduct $20,000 as an estimated attorney's fee to be paid to MacDonald Illig for reviewing and amending the marital trust's Federal and State income tax returns.  Petitioner states that that effort, involving eight years of filed returns, is necessary because of the change in the adjusted basis of the marital trust's assets as determined in Estate of Black I.  Petitioner further states that the $20,000

anticipated fee represents a charge of $2,500 per return.[11]  Petitioner argues that that amount is "similar to what other attorneys in the Erie, Pennsylvania, area would charge" for the work, and might even be lower given MacDonald Illig's "institutional knowledge of the relevant facts underlying the need to amend the returns".

Respondent, relying upon Estate of Streeter v. Commissioner, 491 F.2d 375 (3d Cir. 1974), aff'g T.C. Memo. 1971-260, and Sharpe's Estate v. Commissioner, 148 F.2d 179 (3d Cir. 1945), aff'g 3 T.C. 612 (1944), discussed infra, would deny the $20,000 deduction in its entirety on the ground that the effort involved in amending the marital trust income tax returns "is not necessary to settle * * * [Mrs. Black's] estate, but rather * * * will only benefit petitioner as the trust's sole beneficiary."

---

[11]Petitioner may have miscalculated the per-return fee.  If, as he claims, the work involves the review and possible amendment of Federal and State returns for eight years, that would involve 8 Federal and 8 State returns, or 16 returns in all.  At $20,000, that would mean a fee of $1,250 (not $2,500) per return.  It may be that petitioner considers each year's Federal and State returns as equivalent to a single return because the same entries will appear on both.  Alternatively, it may be that the asset sales where basis is an issue occurred only in some of the years so that only the returns for those years will have to be reviewed and amended.

B.  Analysis

We agree with petitioner that the additional fee is occasioned by Mrs. Black's death and is related to vesting good title to the marital trust assets in petitioner as the distributee beneficiary of Mrs. Black's estate.  Therefore, it relates to the winding up of the estate.

Respondent's reliance on Estate of Streeter and Sharpe's Estate in support of his nondeductibility argument is misplaced.  In those cases, the payments at issue (auctioneer's commissions for selling trust assets and an anticipated trustee's fee for services to be performed on behalf of a trust) were expenses (or anticipated expenses) of fully funded, ongoing testamentary trusts.  That is not the case herein, where the trust was never funded and the anticipated additional attorney's fee relates directly to petitioner's efforts in his capacity as executor to wind up the affairs of the estate.  As the Court of Appeals for the Third Circuit stated in Sharpe's Estate v. Commissioner, 148 F.2d at 181:  "The work of the executor is part of the settlement of the decedent's estate. * * * But the carrying on of the trust is a different enterprise, not in settlement of a dead man's affairs, but for the benefit of the beneficiaries of the trust."

Moreover, respondent's argument is inconsistent with his argument in Estate of Black I that the legal fees paid to MacDonald Illig for work on behalf of the

marital trust (which, in part, were for the preparation of the initially filed Federal and State income tax returns) were not nondeductible per se. Rather, respondent argued they were nondeductible only to the extent that they exceeded an amount considered to be a reasonable and necessary expense of Mrs. Black's estate. Accordingly, to the extent the additional fee may be considered reasonable in amount, it is deductible under section 2053(b).

In our prior Opinion we made the following comment with respect to the legal fees paid to MacDonald Illig:

> If, as Mr. Cullen testified, * * * [the fiduciary income tax] returns reflected only the capital gain passed through to Mrs. Black's estate on Black LP's sale of Erie stock in connection with the secondary offering, the returns could not have been particularly complex. Thus, the fee attributable to the preparation of those returns should be relatively small. [Fn. ref. omitted.]

In Estate of Black I, we held that a 50-50 split of the MacDonald Illig fees between Mr. and Mrs. Black's estates was appropriate even though those fees must have included an unspecified charge for the preparation and filing of the marital trust's Federal and State income tax returns, wholly deductible by Mrs. Black's estate. It follows that we attributed a de minimis amount to that effort, and it further follows that no more than a de minimis amount should be attributed to the

review and amendment of those and/or subsequent returns in order to reflect a revised basis for trust assets sold by the marital trust.

Petitioner has not provided any evidence in the form of anticipated billed hours or hourly billing rates that might explain MacDonald Illig's proposed charge of $20,000 for the services in issue. Nonetheless, in the light of our allowance herein of an estimated trustee's fee under similar circumstances, we find that MacDonald Illig is entitled to a fee of $5,000 for its anticipated tax return review/preparation services. Accord In re Estate of Sonovick, 541 A.2d 374 (Pa. Super. Ct. 1988) (sustaining the trial court's reduction (but not elimination) of a deduction for unsubstantiated executrix's, trustee's, and attorney's fees).

C.  <u>Conclusion</u>

The parties are directed to submit revised Rule 155 computations reflecting a deduction under section 2053(b) by Mrs. Black's estate for legal fees paid to MacDonald Illig in the sum of $860,431.[12]

Decision will be entered

under Rule 155.

---

[12]The $860,431 deduction constitutes the sum of the $577,500 deduction for MacDonald Illig attorney's fees that we allowed in Estate of Black I plus an additional $277,931 paid to that firm that respondent has agreed to plus the additional $5,000 deduction that we allow herein.